NO. 14-1798

---

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

DOUGLAS SKINNER,

Appellant,

-vs-

LOUDOUN COUNTY DEPARTMENT OF MANAGEMENT, ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA (ALEXANDRIA)

---

## OPENING BRIEF OF APPELLANT DOUGLAS SKINNER

---

Counsel for Appellant:

Thomas K. Plofchan, Jr., VSB #34536
Westlake Legal Group
46175 Westlake Drive, Suite 320
Potomac Falls, Virginia 20165
Telephone:  (703) 406-7616
Facsimile: (703) 444-9498
Electronic Mail: tplofchan@westlakelegal.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>14-1798</u>    Caption: <u>Skinner v. Loudoun Cty. Dept. of Management & Financial Svcs. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Douglas Skinner</u>
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                      ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s Thomas K. Plofchan, Jr.                    Date:    August 22, 2014

Counsel for: Douglas Skinner

## CERTIFICATE OF SERVICE
**************************

I certify that on    August 22, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Thomas K. Plofchan, Jr.                    August 22, 2014
           (signature)                                              (date)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE ..............................................................2

SUMMARY OF ARGUMENT .............................................................12

ARGUMENT ..................................................................................13

    I.    **The District Court Misapplied the Law In Holding that Skinner Received the Requisite Minimum Due Process Procedural Protections.  (Questions Presented 1, 2, and 3).**

        A. Skinner Had a Due Process Right to Know the Substance of the Evidence Asserted By the County to Support the Allegations Before His Employment was Terminated.  (Question Presented 2.)

        B. Skinner Had a Due Process Right to Know the Substance of the Evidence Asserted By the County to Support the Allegations Before His Employment was Terminated.  (Question Presented 2.)

        C. LCPPP Rule 11.11(B) Entitled Skinner to Access to and Copies of Relevant Documents and Files Intended to Be Used by the County Ten Days Before the Hearing.  (Question Presented 3.)

    II.   **The District Court Committed Reversible Error By Dismissing the Defamation Per Se Claims Against Nacy, Bisgaier, Reidy, and Cromer on the Basis that there was Insufficient Evidence to Support Allegations of Malice.  (Question Presented 4.)**

CONCLUSION .................................................................................26

REQUEST FOR ORAL ARGUMENT .................................................27

CERTIFICATE OF COMPLIANCE ...................................................28

CERTIFICATE OF SERVICE............................................................30

# TABLE OF AUTHORITIES

<u>CASE LAW</u>

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 106 S. Ct. 2505 (1986) .........................................................14

<u>Arnett v. Kennedy</u>,
416 U.S. 134, 94 S. Ct. 1633 (1974) ...........................................................20

<u>Babbitt v. Sweet Home Chapter, Communities for Great Ore.</u>,
515 U.S. 687, 115 S. Ct. 2407 (1995) .........................................................23

<u>Brock v. Roadway Express, Inc.</u>,
481 U.S. 252, 107 S. Ct. 1740 (1987) ................................................... 16, 17

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 106 S. Ct. 2548 (1986) .........................................................14

<u>Chalkey v. Atlantic Coast Line R. Co.</u>,
150 Va. 301, 143 S.E. 631  (1928) ..............................................................27

<u>Church v. Hubbard</u>,
6 U.S. 187 (U.S. 1804).................................................................................24

<u>Cioca v. Rumsfeld</u>,
720 F.3d 505 (4th Cir. Va. 2013) ................................................................27

<u>Cleveland Board of Education v. Loudermill</u>,
470 U.S. 532, 105 S. Ct. 1487 (1985) ................................. 10, 11, 16, 17, 20

<u>Dash v. Mayweather</u>,
731 F.3d 303 (4th Cir. 2013).......................................................................14

<u>Duncan v. Walker</u>,
533 U.S. 167, 121 S. Ct. 2120 (2011) .........................................................23

<u>EEOC v. Los Alamos Constructors, Inc.</u>,
382 F. Supp. 1373 (1974).............................................................................18

iv

Garraghty v. Virginia, Department of Corrections,
      52 F.3d 1274 (4th Cir. Va 1995) ..................................................................19

Gilbert v. Homar,
      520 U.S. 924, 117 S. Ct. 1807 (1997) .......................................................17

Grimes v. Nottoway,
      462 F.2d 650 (4th Cir. Va 1972) .........................................................15, 19

Market Co. v. Hoffman,
      101 U.S. 112 (1879)......................................................................................23

Matthews v. Eldridge,
      424 U.S. 319, 96 S. Ct. 893 (1976) ...........................................................15

McNeill v. Butz,
      480 F.2d 314 (4th Cir. N.C. 1973) .........................................................16, 19

Montclair v. Ramsdell,
      107 U.S. 147, 2 S. Ct. 391 (1883) ..............................................................23

Monument Assoc. v. Arlington County Bd.,
      242 Va. 145, 408 S.E.2d 889 (Va. 1991)....................................................23

NLRB v. Tamper, Inc.,
      522 F.2d 781(4th Cir. 1975)........................................................................17

Ratzlaf v. United States,
      510 U.S. 135, 114 S. Ct. 655 (1994) ..........................................................23

United States v. Menasche,
      348 U.S. 528, 75 S. Ct. 513 (1955) ............................................................23

Wall Distributors, Inc. v. Newport News,
      228 Va. 358, 323 S.E.2d 75  (Va. 1984)......................................................23

Williams v. Taylor,
      529 U.S. 362, 120 S. Ct. 1495 (2000) ........................................................23

STATUTES, RULES, ORDINANCES

28 U.S.C. §1291 ....................................................................................1

28 U.S.C. §1331 ....................................................................................1

28 U.S.C. §1367 ....................................................................................1

42 U.S.C. §1983 ................................................................................1, 10

FRCP Rule 59(e)..................................................................................1

Virginia Code Ann. §15.2-1507 .........................................................25

LCPPP Rule 11.11 ..............................................2, 6, 7, 11, 13, 22, 23, 24, 25, 26

# STATEMENT OF JURISDICTION

*Basis of District Court's Subject Matter Jurisdiction*

The United States District Court for the Eastern District of Virginia ("District Court") exercised subject matter jurisdiction over this action pursuant to 28 U.S.C §§1331 and 1367. Appellant Douglas Skinner ("Skinner") filed the underlying action in the Circuit Court for Loudoun County, Virginia alleging violations of (1) due process protected under the United States Constitution actionable under 42 U.S.C. §1983, and (2) due process guaranteed under the Virginia Constitution.

*Basis of This Court's Jurisdiction*

Appellate jurisdiction is pursuant to 28 U.S.C. §1291 which grants appellate review of final decisions of United States district courts.

*Timeliness and Ripeness of Appeal*

The issues presented by this appeal are ripe and the appeal was timely filed. On April 2, 2014, the District Court dismissed the case on Defendants' Motion for Summary Judgment. Skinner timely filed his Motion for Reconsideration under Rule 59(e) on April 30, 2014. On July 16, 2014 the District Court denied relief requested in that Motion and affirmed its April 2, 2014 order. The District Court's July 16, 2014 order is a final order that disposes of the parties' claims. Skinner

then filed his Notice of Appeal electronically on August 8, 2014 within the thirty

day deadline.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court committed reversible error when it held that due process does not afford Skinner the opportunity to confront and cross-examine witnesses against him at the grievance hearing when the witness was not identified, called, or present.

2.    Whether the District Court committed reversible error when it held that the County was not required to identify, provide access to, and copies of the relevant files, including documents, that were intended to be used by the County at the grievance hearing at least ten days prior to the hearing pursuant to Section 11.11(B) of the Loudoun County Personnel Policies and Procedures Handbook.

3.    Whether the District Court committed reversible error when it held that minimum due process does not entitle Skinner to be informed of the substance of the relevant evidence supporting the allegations against him prior to termination.

4.    Whether the District Court committed reversible error by holding that the evidence did not support the allegations of malice and by preventing a jury from determining whether malice existed to defeat qualified immunity when such allegations were disputed.

## STATEMENT OF THE CASE

On July 3, 2012, Skinner was terminated from seven years of employment as

an emergency medical services training officer with the Loudoun County

Department of Fire Rescue and Emergency Management (App. 566-67) as a result

of false allegations that he intentionally struck a student in the head.  (App. 657.)

On or about May 8, 2012, Skinner received written notice that he was placed on

administrative leave, effective immediately, pending the investigation of one

allegation of misconduct. (App. 642.) The letter did not inform him of the specific allegations against him, nor did it reveal the identity of his accusers. (Id.) Further, the letter required that he refrain from speaking to anyone on the matter, specifically stating, "You are expected to maintain confidentiality regarding this matter." (Id.)

On May 17, 2012, Skinner received a Statement of Advisement that informed him that he would be questioned "as part of an official Administrative Investigation" (App. 623-26) and "asked questions specifically and narrowly related to" (Id.) : "[a]lleged behavior that was discourteous, disrespectful, unprofessional and harmful towards Stephen Nacy on or about May 6, 2012." (App. 624).[1] That same day, Steve Van Winkle ("Van Winkle"), the investigator assigned to the matter, conducted an interview of Skinner. (App. 570.) After Van Winkle interrogated Skinner, he informed Skinner of the general allegations against him. (Id.) He did not inform him of the specific facts of the allegations, nor did he inform him of any evidence that he had against him. He did not give

---

[1] Skinner simultaneously received three other Statements of Advisement alleging the following charges: "[a]lleged discourteous, disrespectful, and unprofessional conduct by you, towards T.O. Matthew Bisgaier on 04/05/2012" (App. 623); "[a]lleged behavior with Karen Reidy on or about May 6, 2012 that was discourteous, disrespectful, unwanted and unprofessional" (App. 625); and "Doug Skinner submitting an inaccurate time sheet for the pay period ending 05/09/2012." (App. 626.) However, resolution of these matters did not contribute to Skinner's dismissal.

3

Skinner a copy of an alleged email from Stephen Nacy ("Nacy") that prompted the investigation or inform him that he was an alleged eye witness to the actions. (App. 360.)

On June 11, 2012, Skinner received a proposal for termination from Chief William Keith Brower ("Brower") of the Loudoun County Department of Fire, Rescue, and Emergency Management Services. (App. 275.) The proposal for termination indicated that Skinner was investigated for allegations that included: that on May 6, 2012, Skinner made derogatory comments toward a student in his class and physically struck the student in the head and the shin.[2] (Id.)

The proposal for termination indicated that Brower had already made factual findings but would allow Skinner to "present any evidence or mitigating circumstances [Skinner] would like [Brower] to consider." (App. 276.) Skinner determined that the confidentiality provision of the initial notice that he received no longer applied because of Brower's statement that Skinner could present evidence or mitigating circumstances at the meeting, initially scheduled to be held

---

[2] The remaining allegations were: (1) that on April 5, 2012, Skinner was loud, disrespectful, verbally abusive, and personally demeaning toward another member of the training center staff when asked for quality assurance reports; (Id.) (2) that on May 6, 2012, Skinner used the term "red headed step child(ren)" in a conversation with another student after one student indicated that she did not the appreciate the use of that term; (Id.) and (3) that on May 9, 2012, Skinner submitted a timesheet reflecting ten hours of work on April 28, 2012 but several witnesses saw him at a baseball game for three and one half of those hours. (Id.) However, decisions with respect to these actions were not considered bases for Skinner's termination.

4

the following week.  He therefore contacted Leo Kelly ("Kelly"), who was present

that day,  to provide a statement of the events of date of the alleged incident.  (App.

670-671.)

      Skinner was unable to take any other action to gather evidence because the

proposal for termination did not inform Skinner of the evidence which allegedly

supported the allegations against him (App. 275-76), Van Winkle did not provide

Skinner with factual details of the time or any potential witnesses of the alleged

battery, and because Nacy was out of the country.  Skinner requested that his

counsel be permitted to attend the meeting between Brower and Skinner, but this

request was denied.  (App. 701.)  Skinner then  prepared a written dispute of the

allegations based on the limited information Skinner was able to derive from the

interrogation by Van Winkle and presented it to Brower during the meeting.  (App.

661.)

      During the June 25, 2014 meeting, despite this written dispute of the

allegations, Brower failed to divulge the evidence that allegedly supported the

allegation that Skinner physically struck Nacy, including an alleged email from

Nacy and an alleged statement of a witness.  Brower also failed to address the

evidence Skinner offered contrary to the allegations, including Skinner's denial

that he struck Nacy in the head and Kelly's statement that supports Skinner's

denial.  (App. 273.)  Brower terminated Skinner's employment on July 3, 2014.
(App. 702.)

On July 19, 2012, Skinner filed his grievance with the Loudoun County
Department of Management and Financial Services, Human Resources Division,
seeking reinstatement to his position with backpay and attorneys' fees and costs.
(App. 271.)  The panel hearing was set for November 16, 2012.

Grievance procedures for Loudoun County employees are provided in the
Loudoun County Personnel Policies and Procedures Handbook Chapter Eleven.
Section 11.11, titled "Document Exchange Prior to Conduct of the Panel Hearing"
provides the following:

> (A)  Human Resources provides members of the panel with copies of the
> grievance record.  A list of the documents constituting that record is
> provided to the grievant.
>
> (B)  At least **ten calendar days** prior to the panel hearing, the grievant and
> his/her representative are allowed access to and copies of all relevant
> files intended to be used by the County at the hearing.  This does not
> include documents which are protected under State or Federal law or
> regulations.
>
> (C)  At least **five calendar days** prior to the commencement of the hearing,
> each side exchanges documents, exhibits and a list of prospective
> witnesses.

(App. 250.) (bold emphasis in original, underline emphasis added.)  Ten days prior
to the hearing, on November 6, 2012, Skinner sent the County Attorney a letter to
confirm that the County did not intend to use any documents at trial since the

6

County had not identified, and neither Skinner nor his counsel were given access to, or copies of, the relevant files intended to be used by the County at the hearing. (App. 282.)  The County responded that it would allow access to Skinner's Personnel and Employee Relations file, stating, "[w]e always make available the employee's Official Personnel File and his Employee Relations file" (App. 283), but did not provide an identification of those filed it intended to use at the hearing.

Skinner sent the Panel a written objection to the County's refusal to identify files that it intended to use at the hearing.  (App. 284.)  Despite the clear, unequivocal language of Rule 11.11(B), the County Attorney responded arguing that the County is under no requirement to identify or provide access to or copies of *documents* intended to be used at the hearing.  (App. 286.)  Rather, the County Attorney asserted, the County is only to provide access to relevant *files* it intends to use at a grievance panel hearing and that there are no relevant files that the County intended to use.  (Id.)  In circular logic, after stating there were no relevant files that had to be identified, the County Attorney also mentioned that Skinner already possessed "almost all of the documents" to be used as a result of Freedom of Information Act ("FOIA") requests he made after his termination.  (Id.)  On November 9, 2012, in response to its obligations under Rule 11.11(C), the County sent only the documents it believed Skinner did not have in his possession, instead

of sending the documents the County intended to use at the hearing. (App. 650-56.)

Notably, the County's witness list did not include Nacy. However, at the grievance panel hearing, the County Attorney stated that Nacy would not testify but that Nacy's testimony would be heard through the reporting of Van Winkle:

> While you will not hear directly from the victim of the battery, because unfortunately, he is in Afghanistan, **you will hear from this individual, Stephen Nacy, through Mr. Van Winkle**, who spoke with him just a few days after the incident occurred. You will hear from him through the email that he sent to the Deputy Chief for EMS Training, approximately two (2) days after the incident occurred…

(App. 316-17) (emphasis added).

Skinner objected to any statements made by Nacy relayed by Van Winkle because Skinner was prevented from cross-examining Nacy and because he was not identified as a witness or called by the County. (App. 331.) The panel allowed the statements and Van Winkle testified extensively as to what Nacy allegedly told him. (App. 332-332.1.) The County also offered as evidence an email allegedly sent by Nacy containing allegations against Skinner. (App. 604.) Skinner cross-examined Van Winkle only as to his knowledge of the statements, his knowledge of their authenticity and Van Winkle's investigation of the allegations. (App. 359-69.) Van Winkle admitted that he did not recall Nacy's exact words to him, (App. 348), and that he could not even be sure that the person he spoke with on the phone was Nacy. (App. 349.)

The County then called Nathan Wise ("Wise") allegedly to testify that he witnessed Skinner striking Nacy in the head and shin.  (App. 398.)  Upon cross-examination, it was revealed that Wise did not see Skinner make contact with Nacy's shin or Skinner's open hand make contact with Nacy's head.  (App. 408.)  Rather, he testified that he merely believed Skinner hit Nacy because he saw Nacy's head move forward and to the side.  (Id.)  The County then proceeded to call its remaining witnesses, whom Skinner cross-examined.

Skinner then called Kelly and testified himself.  Skinner denied that he hit Nacy in the head.  (App. 585.)  Kelly confirmed that he was present in the room, that if Skinner hit Nacy in the head, Kelly would have seen it, and he did not see anything.  (App. 505.)

On December 5, 2012, the Panel determined "the slap occurred and deserves termination" (App. 657), despite Skinner being denied the ability to confront and cross-examine his accuser, Nacy.

Skinner then filed this action in the Circuit Court for Loudoun County against the Loudoun County Department of Management and Financial Services, Human Resources Division, Loudoun County Department of Fire, Rescue, and Emergency Management Services, Brower, Jose Salazar, Roger Martin, James Williams, Patty Russell ("Russell"), Steven Van Winkle ("Winkle"), Frank Holtz, Robert Noe, Corey Parker, Nacy, Matthew Bisgaier ("Bisgaier"), Karen Reidy

9

("Reidy"), and James Cromer ("Cromer")(collectively "County parties"). (App. 8.) The action was removed to the United States District Court for the Eastern District of Virginia by consent of the parties because Skinner's claims asserted violations of his rights under 42 U.S.C. §1983. Specifically, Skinner asserted a claim of post-termination denial due process.

In the District Court, the County moved to dismiss the action and for summary judgment, erroneously asserting, in part, that "due process protection does not attach to [Skinner's] claims regarding events occurring during the investigatory process" (App. 54) and that "due process protection does not require the right to discovery, to confront witnesses pre-termination or to compel the attendance of witnesses at a grievance hearing." (Id.) The County did not address Skinner's claims of post-termination denial of due process and the right to <u>confront and cross-examine</u> witnesses at the grievance hearing.

Skinner timely filed his opposition to the motion to dismiss and motion for summary judgment[3] on February 3, 2014. The County parties filed their response on February 10, 2014, to which Skinner responded on February 13, 2014. On April 2, 2014, the District Court decided the matter on the papers and granted the County parties' motion for summary judgment. (App. 162.)

The District Court made the following rulings in doing so:

---

[3] Skinner filed the Opposition to Defendants' Motion to Dismiss and for Summary Judgment on the Clerk's instruction for docketing purposes because the Opposition asserted summary judgment in the alternative to denial of Defendants' Motion. Thus, docket entries 9 and 10 are the same.

(1) Under <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 105 S. Ct. 1487 (1985), the 'pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story'…As for post-termination process, 'the Due Process Clause requires provision of a hearing 'at a meaningful time.' (App. 166-67.)

(2) Skinner was provided with more process than Constitutionally required because under <u>Loudermill</u>, Skinner is not entitled to the identity of his accusers or the right to confront them pre-termination. (App. 167.) Even if the Constitution required these rights, Skinner's written submission challenging the allegations demonstrates that Skinner knew the identities of the accusers and had a "clear understanding of the evidence against him and the sources of that evidence." (Id.)

(3) Loudoun County grievance procedure, specifically Section 11.11 (B), allows "access to the files Skinner believed to be relevant to his hearing by November 6, 2012…" and "under no circumstances would Skinner or his representative have been able to access the files ten days before the grievance panel hearing." (App. 168.)

(4) Skinner does not have a right to confront his accusers "because the Sixth Amendment right to confrontation does not apply in civil cases." (App.

11

169.)  In addition, Skinner had the ability to cross-examine the live witnesses that were present at the hearing and the ability to call his own witnesses and present his own evidence.  (Id.)

(5)  The defendants against whom defamation per se was alleged are protected under the doctrine of "intracorporate immunity" because Skinner failed to present evidence of malice.  (App. 170.)

Upon review of the District Court's Order, Skinner filed his Motion for Reconsideration on April 30, 2014.  (App. 171.)  The County parties filed their response on May 12, 2014.  (App. 182.)  The District Court denied the Motion for Reconsideration on July 16, 2012.  (App. 192.)  On August 8, 2014, Skinner filed his Notice of Appeal.

## SUMMARY OF ARGUMENT

Skinner was denied due process because he was informed of allegations of misconduct against him without sufficient detail to formulate a defense.  He was investigated and terminated without the benefit of being informed of the evidence against him.  He was then denied identification of files intended to be used by the County at the post-termination hearing so that he could exercise his right to access and copy them.  Most importantly, he was denied the opportunity to confront and cross-examine one witness whose statements were offered against him at the post-termination hearing.

12

The District Court's holding that Skinner was afforded all of the protections of due process is reversible because it cannot be supported by the record. Further, the District Court misinterprets and discounts the significance of the procedural protections set in place by LCPPP Rule 11.11(B), holding that it imposes no duty on the County.

Skinner contends that the due process guaranteed by the Constitution entitled him to know, in addition to the allegations, the evidence that the County had against him before his termination so that he may defend himself properly prior to termination, and that he was entitled to the opportunity to confront and cross-examine any witness whose statements were used against him. Further, Skinner contends that the County's own procedures guarantee him identification of, access to, and copies of the documents intended to be used by the County at the hearing. Finally, Skinner contends that the District Court's ruling dismissing the defamation per se claims was in error because it involved a factual determination where there was a clear dispute as to whether there was malice. For these reasons and the arguments that support them below, this Court should vacate the District Court's Orders entered on April 2, 2014 and July 16, 2014 and allow this case to proceed to trial.

## **ARGUMENT**

This Court reviews "a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the trial court and **without deference to the trial court**. In conducting such review, we construe the evidence, and all reasonable inferences that may be drawn from such evidence, **in the light most favorable to the nonmoving party**." <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th Cir. 2013)(citations omitted)(emphasis added).

Summary judgment cannot be granted under Rule 56 of the Federal Rules of Civil Procedure unless the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)(emphasis added). In determining whether summary judgment is appropriate, a court **must not weigh the evidence**. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(emphasis added). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…" <u>Id.</u> at 255. Instead, the court's role is to determine whether, when the facts and all inferences to be drawn from them, are viewed in the light most favorable to the nonmovant, there exists an issue to be decided by a fact-finder at trial. <u>Id.</u> at 247-248. It is the movant's burden to demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmovant is required only to show that

there is a genuine issue for trial by pointing to specific facts beyond the pleadings.

Id. at 324.

Here, the District Court granted summary judgment improperly for two

reasons: (1) the District Court improperly construed the due process protections

afforded to Skinner and, (2) the District Court improperly weighed the evidence

and determined that there was no malice on the part of Nacy, Bisgaier, Reidy, and

Cromer that would allow a claim for defamation per se. Thus, this Court must

review the District Court's rulings de novo.

## I.    The District Court Misapplied the Law In Holding that Skinner Received the Requisite Minimum Due Process Procedural Protections. (Questions Presented 1, 2, and 3).

In Grimes v. Nottoway, this Court stated that minimal procedural due

process in hearings involving the employment termination include "adequate

notice, a specification of the charges against [the grievant], **an opportunity to**

**confront the witness against [the grievant]** and an opportunity to be heard in [the

grievant's] own defense." 462 F.2d 650, 653 (4th Cir. Va. 1972)(emphasis added),

cert. denied, 409 U.S. 1008, 93 S. Ct.439 (1972). In 1976, the United States

Supreme Court provided further elaboration on what process is constitutionally due

in administrative hearings. Matthews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893

(1976). In Matthews, the Supreme Court explained that a court must balance three

factors: (1) the private interest to be affected; (2) the risk of erroneous deprivation

and the probable value of additional or substitute procedural safeguards; and (3) the government's interest. Id. at 335, 903. There is no dispute that Skinner has a protected property interest in his continued employment with the County parties. The only question with respect to due process is what does due process entail in this factual context?

A government entity may discharge an employee with a protected property interest if it provides oral or written notice of the charges, an explanation of the evidence against the grievant, an opportunity to present a defense prior to discharge and "a prompt opportunity for complete administrative and judicial review" after termination. Brock v. Roadway Express, 481 U.S. 252 , 261-262, 107 S. Ct. 1740 (1987); Loudermill supra at 546. This Court, echoing the Supreme Court, has emphasized that when there is a dispute of fact, or where there is a risk that an accusation is motivated by "malice, vindictiveness, intolerance, prejudice, or jealousy" McNeill v. Butz, 480 F.2d 314, 321 (4th Cir. 1973), it is particularly critical that the employee has a right to confront and compel witnesses. Id. As demonstrated below, Skinner was deprived of his due process rights before and after termination of his employment.

    A. Skinner Had a Due Process Right to Know the Substance of the
       Evidence Asserted By the County to Support the Allegations Before
       His Employment was Terminated.  (Question Presented 2.)

16

The United States Supreme Court has held in the context of a protected interest in employment, in addition to the administrative procedure enacted by a State, procedural due process protections require that the employee must be given at least (1) "written notice of the charges" against him, (2) "**an explanation of the employer's evidence**", and (3) "an opportunity for the employee to tell his side of the story." Gilbert v. Homar, 520 U.S. 924, 928 (1997)(emphasis added)(summarizing the holding of Loudermill); Loudermill supra at 546; Brock supra at 264-65, 1749("[T]he constitutional requirement of a meaningful opportunity to respond before a temporary deprivation may take effect entails, at a minimum, **the right to be informed not only of the nature of the charges but also of the substance of the relevant supporting evidence**." (emphasis added)).

The District Court improperly equates Skinner's response to the allegations with being Constitutionally provided with an explanation of the employer's evidence. There is no reference in the record to the County providing anything to Skinner prior to termination other than two of the three Loudermill requirements: notice of the allegations and an opportunity to tell his side of the story. Without an explanation of the County's evidence, Skinner was forced to guess at the nature of that evidence and to essentially argue in the dark. As this Court noted in NLRB v. Tamper, Inc., 522 F.2d 781, 787 (4th Cir. 1975), "[f]air play, a fair trial, and the requirement of due process of law demand that [a litigant] be permitted to find out

17

in advance of trial what the case is all about." (citing EEOC v. Los Alamos Constructors, Inc., 382 F.Supp. 1373 (1974)).  The County should not have been permitted to play "hide the ball."

Here, Skinner was never given an explanation of the evidence against him before his employment was terminated.  The District Court erroneously held that Skinner's written submission refuting the _allegations_ against Skinner demonstrated that Skinner was informed of the County's _evidence_.  (App. 167.)  The written submission was drafted after Skinner received the proposal for termination which informed him of the _allegations_ against him.  There is nothing in Skinner's submission that demonstrates Skinner was informed of the _evidence_ against him.

For instance, there is no indication that Skinner knew the County believed Nathan Wise witnessed the alleged striking of Nacy; that Nacy had told Patricia Russell that Skinner struck him; or, that Skinner saw or had any information with respect to the alleged email that was allegedly sent by Nacy.  In fact, the written submission confirms that no witness was identified to him.  (App. 661.)  There is no indication that Skinner was told that Patricia Russell or anyone else had seen him at a baseball game during work hours.  There is no indication that Skinner was informed that the County had an audio recording of a conversation between Skinner and Bisgaier.   Simply put, the County did not provide Skinner with the evidence that it had to support the allegations against him as required by the

protections of the United States Constitution.  Therefore, this Court must vacate

the District Court's order so that this case may proceed to trial.

      B.  <u>Skinner was deprived of the right to confront Nacy before termination and after termination.</u>  (Question Presented 1).

The Court has explained time and again that the scope of pre- and post-

deprivation procedures are so intertwined that the totality of the circumstances

must be evaluated to determine whether a grievant was deprived of a right

protected by the Fourteenth Amendment of the Constitution.  Specifically, this

Court stated,

> …although the right to confront and examine witnesses is not a necessary feature of a pre-deprivation hearing, when this right has not been afforded pre-deprivation, the risk of erroneous deprivation of a protected interest is so great, that it has been required post-termination even when the 'facts giving rise to the discharge are undisputed'… 'the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons for allowing the abbreviated pretermination procedures.'

<u>Garraghty v. Virginia, Department of Corrections</u>, 52 F.3d 1274, 1282-1283 (4th

Cir. Va. 1995).

One year after <u>Grimes</u> <u>supra</u>, the Court affirmed the ruling in <u>Grimes</u> in

<u>McNeill v. Butz</u>, 480 F.2d 314, 321-323 (4th Cir. N.C. 1973).  Quoting the United

States Supreme Court, this Court explained:

> The Court outlined the rudiments of due process, emphasizing the crucial function of confrontation: '**<u>In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.</u>**'…Certain principles have remained relatively immutable in our jurisprudence.  One of these is

19

that where governmental action seriously injures an individual, and the reasonableness of the action depends on factfindings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.  While this is important in the case of documentary evidence, **it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.  We have formalized these protections in the requirements of confrontation and cross-examination…This Court has been zealous to protect these rights from erosion.  It has spoken out…in all types of cases where administrative…actions were under scrutiny**.

480 F.2d 314, 321-323 (4th Cir. N.C. 1973)(citations omitted)(emphasis added);

see also Arnett v. Kennedy, 416 U.S. 134, 215, 94 S. Ct. 1633, 1674 (1974),

(overruled in part by Loudermill supra).  This Court further explained that the

government's "interest in the efficient and orderly discharge of unsatisfactory

employees"…"does not outweigh the employee's interest in having an effective

opportunity to challenge damning evidence and in preserving his job and

reputation." Id.

The District Court ignores this clearly established law.  It also misapplies the

Supreme Court's holding in Loudermill.  Loudermill simply explains that a pre-

termination hearing that comports with due process (notice of charges, explanation

of evidence, and opportunity to respond) must be afforded if the employer decides

to terminate an employee prior to a full evidentiary hearing.  Loudermill at

545,1495.  It does not eliminate the requirement that a terminated employee have

20

an opportunity to confront the witnesses against him, whether it is before termination or after.

Applying these established principles to the instant matter, since Skinner was not afforded the opportunity to confront his accusers prior to his termination, he should have been afforded the opportunity to confront all witnesses against him at the grievance hearing.  Skinner was deprived of the right to cross-examine Nacy, the only accuser whose allegations resulted in a determination by the Panel that his employment should be terminated.  Nacy was not identified as a potential witness by the County prior to the Grievance Hearing as required by the LCPPP.

However, the County allegedly offered Nacy's hearsay statements through the testimony of Van Winkle.  (App. 332.1).  Skinner does not challenge the admissibility of the hearsay statements at the hearing.  His challenge is that by offering Nacy's statements against him but failing to call Nacy as a witness, the County deprived Skinner of his due process right to confrontation and cross-examination because he could not confront or cross-examine Nacy.  Van Winkle could not remember Nacy's words and could not answer questions relating to Nacy's motivations, impressions, agenda, if any, or details of the sequence and timing of events, layout of the room, exchanges between Skinner and Nacy, or other details involved during the alleged incident.  These can only be drawn from Nacy himself.  Further, Skinner cannot be expected to call Nacy himself because it

would be against his interest, especially considering that he did not know that Van

Winkle would offer testimony of Nacy's version of the events.   The record

supports the proposition that it is reasonable to believe that Nacy's version of the

events would not be offered through Van Winkle's testimony because, for

example, Reidy was not listed as a witness and Van Winkle did not testify as to her

version of the events.

Finally, the District Court's holding that Skinner does not have a Sixth

Amendment right to confrontation is perplexing.  Skinner never asserted a Sixth

Amendment right to confrontation and has made clear throughout his briefs that he

asserts his right to confrontation under the Fifth and Fourteenth Amendments.  As

this is the District Court's only basis for denying a right of confrontation, and since

no Sixth Amendment claim was made, there is no valid stated basis to deny that

Skinner's right to confront and cross-examine witnesses was compromised.  This

Court must overturn the District Court's holding as Skinner was deprived of his

employment without ever having the opportunity to confront and cross-examine

Nacy.

     C. <u>LCPPP Rule 11.11(B) Entitled Skinner to Access to and Copies of
Relevant Documents and Files Intended to Be Used by the County
Ten Days Before the Hearing.</u>  (Question Presented 3).

It is a well-settled rule of statutory construction that each word in a statute,

rule, or ordinance is given effect.

'It is our duty to give effect, if possible, to every clause and word of a statute.' <u>United States v. Menasche</u>, 348 U.S. 528, 538-539, 99 L. Ed. 615, 75 S. Ct. 513 (1955) (quoting <u>Montclair v. Ramsdell</u>, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 (1883)); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) (describing this rule as a "cardinal principle of statutory construction"); <u>Market Co. v. Hoffman</u>, 101 U.S. 112, 115, 25 L. Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'"). We are thus "reluctant to treat statutory terms as surplusage" in any setting. <u>Babbitt v. Sweet Home Chapter, Communities for Great Ore.</u>, 515 U.S. 687, 698, 132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995); <u>see also</u> <u>Ratzlaf v. United States</u>, 510 U.S. 135, 140, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994).

<u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2011); <u>see also</u>  <u>Monument Associates, et al. v. Arlington County Board, et al.</u>, 242 Va. 145 (explaining that ordinances are strictly construed), <u>Wall Distributors, Inc. v. City of Newport News</u>, 228 Va. 358, 363, 323 S.E.2d 75 (1984)(explaining that rules are strictly construed.).  The plain language of §11.11(B) reads: "At least **ten calendar days** prior to the panel hearing, the grievant and his/her representative are allowed access to and copies of all relevant files **intended to be used by the County at the hearing**."

Inherent in the construction of Rule 11.11(B) is the need for Skinner to know what files or documents the County intends to use so that he can avail himself of his rights of copying and access.  The County must make this identification prior to ten days before the hearing so Skinner can exercise his rights at least ten days prior to the hearing.

23

The argument that was made in the proceedings below and is anticipated to be made again is that the Rule does not require access to documents the County intends to use, just the files it keeps. This argument must fail as there would be no purpose to requiring the disclosure of files it keeps but not the documents it intends to use at the hearing. This interpretation is supported by the fact that the very next sentence in Rule 11.11(B) excludes "<u>documents</u> which are protected under State or Federal law or regulations." (emphasis added).

The District Court erred when it concluded that Skinner requested access to the files at 6:15 p.m. on November 6, 2014. (App. 168.) At that time Skinner, requested confirmation that no files would be used as there was no prior identification of files that he could then access or copy. (App. 282.) The District Court's opinion requires Skinner to put the proverbial "cart before the horse" and to request copies of documents that he cannot identify. The law does not require Skinner to perform an impossibility. <u>Church v. Hubbard</u>, 6 U.S. 187 (1864) ("no man can be required to perform impossibilities.").

Further, if the County was not required to identify the documents that were intended to be used by the County, there was no way for Skinner to determine which documents he should copy. There would be no purpose to creating a rule as part of the grievance procedure (notably in a section entitled "Document Exchange Prior to Conduct of Hearing") that provides a grievant with access to and copies of

24

files that the County maintains in general. By this interpretation, the words "intended to be used by the County at the hearing" would be rendered meaningless and contrary to the rules of statutory construction. Even further, Skinner's interpretation of the statute is in line with the requirements of Virginia Code §15.2-1507 which provides that all grievance procedures include certain components, including:

> [t]hat the local government …provide the grievant with a list of the documents furnished to the panel or hearing officer, and the grievant and his attorney, at least 10 days prior to the scheduled hearing, shall be allowed access to and copies of all relevant files intended to be used in the grievance proceeding.

Va. Ann. Code §15.2-1507(A)(10)(b)(3).

Moreover, the argument that Skinner had previously requested and received most of the documents through his Freedom of Information Act request is unavailing. Whether Skinner may have had the documents the County intended to use serves him no benefit if the documents the County intends to use are not identified by the County per Rule 11.11(B).

The County asserted that it provided the documents as required in Rule 11.11(C) but in fact, it did not. (App. 650.) Instead, the County provided the documents it believed Skinner did not already have. (Id.) Skinner's FOIA request is irrelevant to the duties incumbent upon the County with respect to the grievance hearing. The error is not harmless as Skinner's right to procedural due process was

infringed upon and he would have had, or at least may have had, a different

strategy had he been given identification of, access to, and copies of, the

documents that the County intended to use ten day prior to the hearing.

The District Court misinterpreted the language of LCPPP Rule 11.11(B) in

its entirety and its holding must be struck down.  Under the District Court's

interpretation, the County was to provide Skinner with access to the files that

_Skinner_ believed to be relevant to the hearing, as long as Skinner requested access

to the files at least ten days prior to the hearing, creating a deadline of ten days

before the hearing.  (App. 168.)  It makes no sense that the County would be

required to provide Skinner with access to and copies of files of which Skinner

does not know the contents.  It also defies reason to create a deadline ten days

before the hearing that works against the grievant for a rule that provides a benefit

to him and no disadvantage to the County.  The District Court's interpretation is

contrary to logic and rules of statutory construction and must be overturned.

**II.    The District Court Committed Reversible Error By Dismissing the
Defamation Per Se Claims Against Nacy, Bisgaier, Reidy, and
Cromer on the Basis that there was Insufficient Evidence to Support
Allegations of Malice.**  (Question Presented 4.)

The District Court held that Nacy, Bisgaier, Reidy, and, Cromer could not be

held liable for defamation per se under Virginia law because Skinner had not

presented any evidence of malice.  (App. 170.)  Skinner alleged that these

defendants intentionally made false statements to the County (App. 25).  It is

reasonably inferred from this allegation that Skinner alleged that Nacy, Bisgaier, Reidy, and Cromer acted with malice.

Furthermore, as correctly cited by the District Court, "…malice is a question of fact to be submitted to a jury…" <u>Chalkey v. Atlantic Coast Line R. Co.</u>, 150 Va. 301, 306 (1928).  The District Court's ruling is premature because the County parties' Motion to Dismiss and for Summary Judgment was filed and heard before an answer was filed and before any discovery was exchanged.  While the County combined its Motion for Summary Judgment with a Rule 12(b)(6) Motion, the District Court did not rule on the Rule 12(b)(6) Motion.  Even if it had, Skinner is entitled to the presumption that the facts pled are true.  <u>Cioca v. Rumsfeld</u>, 720 F.3d 505 (2013).  By ruling that there is no evidence that malice existed, the District Court weighed the facts alleged and contained in the record, and usurped the role of the jury.  The District Court is without the authority to make credibility determinations or to weigh the evidence in this case and therefore its ruling with respect to the defamation <u>per se</u> claim must be reversed.

## **CONCLUSION**

The Constitution guarantees procedural due process to protect fundamental notions of fairness and justice.  Skinner was deprived of these protections when (1) the County refused to provide him with an explanation of evidence that it had to support the allegations against him; (2) the statements of a witness who was not

present at the grievance hearing was used against him without giving Skinner the opportunity to confront or cross-examine him; and (3) the County failed to identify the documents it intended to use at the hearing so Skinner could obtain access or copies as provided by the County grievance procedure Rules. The District Court erred in determining what procedural due process protections that should have been afforded to Skinner and his rulings should be reversed and the case remanded to continue.

The District Court also erred by making a credibility and evidentiary determination on the disputed issue of whether malice existed to defeat a claim of qualified immunity on a motion for summary judgment. In addition, the District Court failed to rule on the Rule 12(b)(6) Motion. The District Court's decision is based entirely on its weighing of the pleadings and the record of the administrative hearing, despite there being an assertion of malice. The District Court has no authority to dismiss the defamation per se claim based on a factual determination that should be made by a jury.

For these reasons and the arguments contained in this brief and in the record below, Skinner requests that the Court vacate the April 2, 2014 and July 16, 2014 orders of the District Court and allow this case to proceed to trial.

## **REQUEST FOR ORAL ARGUMENT**

Appellant, Douglas Skinner, respectfully request that this Court hear oral argument in this case.

Respectfully Submitted,

DOUGLAS SKINNER

By Counsel

/s/ [Thomas K. Plofchan, Jr.]

_____

Thomas K. Plofchan, Jr.

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for appellant certifies that the accompanying brief is printed in 14 point typeface, with serifs, and, including footnotes, contains no more than 14,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains 5,551 words.

/s/ [Thomas K. Plofchan, Jr.]

_____

Thomas K. Plofchan, Jr.

30

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies:

1.  That a copy of the foregoing Appellant's Opening Brief was electronically filed with the Clerk of the Court using the CM/ECF System on October 14, 2014, which will send notice of such filing to the following registered CM/ECF users:

> Julia B. Judkins, 22597
> BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
> 3920 University Drive
> Fairfax, Virginia 22030
> Telephone: (703) 385-1000
> Facsimile: (703) 385-1555
> Electronic Mail: jjudkins@bmhjlaw.com

2.  This same date, ten paper copies of the same were sent via overnight delivery by commercial carrier to the clerk's office.

/s/ [Thomas K. Plofchan, Jr.]
_____

Thomas K. Plofchan, Jr.