RECORD NO. 14-1798

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

DOUGLAS SKINNER,

*Plaintiff - Appellant,*

v.

LOUDOUN COUNTY DEPARTMENT OF MANAGEMENT AND
FINANCIAL SERVICES, HUMAN RESOURCES DIVISION;
LOUDOUN COUNTY DEPARTMENT OF FIRE RESCUE AND
EMERGENCY MANAGEMENT; WILLIAM KEITH BROWER;
JOSE SALAZAR; ROGER MARTIN; JAMES WILLIAMS;
PATTY RUSSELL; STEVEN VAN WINKLE; FRANK HOLTZ;
ROBERT NOE; COREY PARKER; STEPHEN NACY;
MATTHEW BISGAIER; KAREN RIEDY AND JAMES CROMER ,

*Defendants - Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

**RESPONSE BRIEF OF APPELLEES**

_____

Julia B. Judkins
Virginia State Bar No. 22597
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 University Drive, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
(703) 385-1555 (facsimile)
jjudkins@bmhjlaw.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1798__       Caption: __Skinner v. Loudoun County, et. al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Loudoun Cty. Dept. of Mgmt. & Fin. Ser., Loudoun Cty. Dept. of Fire & Rescue Emer. Mgmt., W. Brower,__
(name of party/amicus)
__C. Parker, K. Reidy, S. Winkle__
__M. Bisgaier, J. Cromer, F. Holtz, R. Martin, S. Nacy, R. Noe, J. Salazar, J. Williams, P. Russell,__

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                   ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _September 8, 2014_

Counsel for: _Loudoun County, et. al._____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____9/8/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____    _____
          (signature)                              (date)

# TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................... iii

I.     Issues Presented for Review ........................................................................1

II.    Statement of the Case ..................................................................................1

III.   Summary of the Argument ..........................................................................5

IV.   Standard of Review Applicable to Review of Decisions Granting Summary
      Judgment and Motion to Dismiss ................................................................8

V.    The District Court properly held that Skinner was granted more than
      adequate process in the course of terminating him for assaulting a student ...9

      A.    The County provided Skinner with more than adequate process prior
            to his termination (Issue Presented No. 3) ...........................................9

      B.    The County did not deprive Skinner of due process by not calling
            Nacy as a witness at Skinner's post-termination hearing (Issue
            Presented No. 1). .................................................................................13

            1.    Skinner's right to a post-termination hearing does not
                  require the County to compel the attendance of Skinner's
                  accusers at the hearing ...............................................................14

            2.    Skinner suffered no deprivation of due process on account of
                  Nacy's absence...........................................................................18

      C.    Skinner did not have a protected interest in receiving an
            "identification" of "the files or documents the County intends to use"
            at his grievance hearing (Issue Presented No. 2) ……………..…….21

            1.    Skinner misinterprets LCPPP Section 11.11(B).......................22

i

2.    Even if Section 11.11(B) required the County to identify documents, Skinner had no constitutional right to such an identification ...........................................................................24

3.    Skinner was not deprived of any right and suffered no prejudice in his ability to defend himself at his grievance hearing ..........26

VI.    The District Court properly held that Skinner's defamation *per se* claim fails under Fed. R. Civ. P. 12(b)(6) because Skinner made no showing of malice (Issue Presented No. 4) ..............................................................................27

VII.    Conclusion ...................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................31

CERTIFICATE OF SERVICE ..............................................................32

# TABLE OF AUTHORITIES

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12 ........................................................................ 5, 7-8, 27

Fed. R. Civ. P. 56 ...........................................................................5, 7

## VIRGINIA CODE

Va. Code § 15.2-1507 ........................................................................21

Va. Code § 8.01-247.1 .......................................................................28

## LOUDOUN COUNTY PERSONNEL POLICIES

LCPPP Section 11.11(B) .............................................3-4, 6-7, 21-23, 26

LCPPP Section 11.11(C) ............................................................. 3-4, 23

## CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)................................8

*Austin v. United States*, 609 U.S. 602 (1993) ........................................14

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ..........................................15

*Brock v. Roadway Express*, 481 U.S. 252 (1987)..................................5-6, 11-12

*Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961) ...............................25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................8

*Church v. Hubbart*, 6 U.S. 187 (1804) ..................................................21

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).......5-7, 9-12, 14-15, 25

*Crawford v. Washington*, 541 U.S. 36 (2004) ........................................15

*De Sole v. United States*, 438 F.3d 404 (4th Cir. 2006) .............................................8

*Detweiler v. Virginia Dep't of Rehabilitative Servs.*, 705 F.2d 557
(4th Cir. 1983)................................................................................ 6, 14-15

*Dickenson v. Wal-Mart Stores, Inc.*, No. 96-0240, 1997 U.S. Dist. LEXIS 19459
(W.D. Va. Nov. 3, 1997)...................................................................28

*Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970) ..................................25

*Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127 (2003) ................................ 29-30

*Garraghty v. Virginia Dep't of Corrs.*, 52 F.3d 1274
(4th Cir. 1995)...................................................... 6-7, 13-15, 17-19, 24-25

*Gilbert v. Homar*, 520 U.S. 924 (1997) ...................................5, 7, 11-12, 17-18, 24

*Grimes v. Nottoway Cnty. Sch. Bd.*, 462 F.2d 650
(4th Cir. 1972)............................................... 4, 6-7, 13, 15-16, 17-18, 26

*Gunter v. Virginia State Bar ex rel Seventh Dist. Comm.*, 241 Va. 186 (1991)......24

*Holland v. Rimmer*, 25 F.3d 1251 (4th Cir. 1994)..........................................5, 9, 26

*Jordan v. Prince William Cnty.*, No. 1:08-cv-89, 2008 U.S. Dist. LEXIS 80321
(E.D. Va. 2008) ...................................................................16

*Jordan v. Prince William Cnty.*, 326 F. App'x 243 (4th Cir. 2009)......................16

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ........................................7

*Larimore v. Blaylock*, 259 Va. 568 (2000) .......................................... 28-29

*Malghan v. Evans*, 118 F. App'x 731 (4th Cir. 2004) ............................................24

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................7, 14-15, 18, 25-26

*Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012)..........................................7, 29

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) .................................... 14-15

*Mills v. Steger*, 64 Fed. App'x 864 (4th Cir. 2003) ...................................................10

*Morris v. City of Danville*, 744 F.2d 1041 (4th Cir. 1984) ......................................25

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ..............................................................25

*Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250
(4th Cir. 2009) ................................................................................................ 8, 29-30

*Palotai v. Univ. of Md.*, 38 F. App'x 946 (4th Cir. 2002) .......................................25

*Riccio v. Cnty of Fairfax*, 907 F.2d 1459 (4th Cir. 1990)..................................10, 25

*Roberts v. Cnty. of Fairfax*, 937 F. Supp. 541 (E.D. Va. 1996) ........................ 15-16

*Story v. Norfolk-Portsmouth Newspapers, Inc.*, 202 Va. 588 (1961)............... 29-30

*Thompson Everett Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317 (4th Cir. 1995)...........8

Appellees, the Loudoun County Department of Management and Financial Services, Human Resources Division ("LCDMFS"), Loudoun County Department of Fire Rescue and Emergency Management ("LCDFREM") and multiple individual Loudoun County employees, collectively "the County," state as follows in opposition to Appellant Douglas Skinner's ("Skinner") opening brief.

## I.    Issues Presented for Review

1.    Whether the District Court properly held that Skinner was not deprived of due process when the County did not compel the appearance and testimony of one of his accusers at his post-termination grievance hearing.

2.    Whether the District Court properly held that Skinner was not deprived of due process when ten days prior to his grievance hearing he did not receive a specific identification of documents that he asserts he never requested.

3.    Whether the District Court properly held that Skinner was not deprived of pre-termination due process.

4.    Whether the District Court properly held that Skinner failed to state a claim for defamation *per se* by failing to plead facts demonstrating malice.

## II.    Statement of the Case

On May 8, 2012, Douglas Skinner ("Skinner"), an emergency medical services training officer with the Loudoun County Department of Fire Rescue and Emergency Management ("LCDFREM"), was placed on paid administrative leave

1

by Chief William Keith Brower ("Chief Brower") pending the investigation of charges that he struck, kicked, and verbally assaulted one of his students, Stephen Nacy ("Nacy"). (App. 642, 275-76, 702.) Skinner was notified that the allegations against him would be investigated and that he may be contacted pursuant to the investigation. (App. 642.)

While Skinner was on paid leave, Steven Van Winkle ("Van Winkle") was retained to investigate the claims against Skinner. (App. 13-14.) Van Winkle interviewed numerous individuals, including Skinner, Nacy, and witnesses Leo Kelly ("Kelly") and Nathan Wise ("Wise"), and informed Skinner of the allegations against him. (App. 14, 335.) On June 11, 2012, after five weeks of investigations, Chief Brower issued a letter to Skinner identifying and elaborating specific allegations of misconduct and identifying the county code provisions such conduct violated. (App. 275-76.) Chief Brower notified Skinner that he was considering terminating his employment, but invited him to meet and provide an explanation of what occurred in person or in writing. (App. 276.) Chief Brower proposed a meeting date of June 19, 2012, but Skinner's attorney, Thomas K. Plofchan, Jr., responded with a request that the meeting be rescheduled. (App. 658.) The meeting was postponed until June 25, 2012, at which time Skinner not only appeared in person, but submitted a lengthy written refutation of the allegations against him prepared by Mr. Plofchan. (App. 659-700.) Following the

meeting, and after considering all of the information presented, including Skinner's written submission, Brower terminated Skinner by letter on July 3, 2012. (App. 702-703.) Skinner filed a grievance on July 19, 2012. (App. 271-73.) After meeting with Brower on June 25, 2012, but prior to filing his grievance on July 19, 2012, Skinner filed five FOIA requests with the County, each of which was responded to by July 16, 2012. (App. 201-202, 704-887.)

On September 28, 2012, LCDMFS informed Skinner, Chief Brower, and Deputy County Attorney Milissa Spring ("Spring") that the grievance hearing would be held on November 16, 2012 and identified applicable grievance procedures, including sections of the Loudoun County Human Resources Handbook, Personnel Policies ("LCPPP"). (App. 278-80.) LCPPP Section 11.11.(B) states that "[a]t least ten calendar days prior to the panel hearing, the grievant and his/her representative are allowed access to and copies of all relevant files intended to be used by the County at the hearing." (App. 250.) LCPPP Section 11.11(C) states that "[a]t least five calendars days prior to the commencement of the hearing, each side exchanges documents, exhibits and a list of prospective witnesses." (App. 250.)

Neither Skinner nor Mr. Plofchan requested access to or copies of any documents or files before the close of business on November 6, 2012. (App. 194-95.) Instead, at 6:47 p.m. on November 6, 2012, Mr. Plofchan sent a letter by

facsimile to Spring seeking confirmation that, because he had not yet been provided with any documents pursuant to Section 11.11(B), the County would not be presenting documentary evidence at the grievance hearing. (App. 282.) Spring saw this letter the following morning and responded that she had not received any request for documents by November 6, 2012, but that Skinner was nonetheless welcome to review any such documents upon request. (App. 195, 283.) Spring also stated that the County would be submitting documents at the November 16, 2012 hearing and that the County's witness and exhibit list, required under Section 11.11(C), would be provided two days early. (App. 283.) Skinner submitted his witness and exhibit list, which did not list Nacy as a witness, but listed Kelly, as well as documentary evidence from recorded interviews of Nacy and a memorandum of Van Winkle's investigation of Nacy's claims. (App. 288-95.) Skinner's witness and exhibit list also included a partial quotation from this Court's 1972 decision in *Grimes v. Nottoway Cnty. Sch. Bd.*, 462 F.2d 650 (4th Cir. 1972). (App. 291-95.)

At his hearing, Skinner was represented by Mr. Plofchan. (App. 297.) Mr. Plofchan presented an opening statement, cross-examined and re-crossed witnesses, objected to testimony, presented both testimonial and documentary evidence in support of Skinner, and submitted, over the County's objection, <u>documents that were not disclosed prior to the hearing</u>. (App. 518-19.) Nacy was

4

not present at the hearing because he was overseas in Afghanistan.  (App. 316-17.)
However, Mr. Plofchan cross-examined Wise, the County's witness, regarding the
alleged assault and elicited testimony from Skinner's supporting witness, Kelly.
(App. 399-414, 504-21.)  On December 5, 2012, the grievance panel unanimously
upheld Skinner's termination, finding that Skinner struck Nacy.  (App. 657.)

## III.    <u>Summary of the Argument</u>

This Court should uphold the District Court's decision granting summary
dismissal of Skinner's due process claims under Fed. R. Civ. P. 56 and the holding
that he failed to state a claim of defamation *per se* under Fed. R. Civ. P. 12(b)(6).

Skinner's first argument, that he was denied pre-termination due process
because he was not informed of the "substance" of the County's evidence prior to
his pre-termination hearing, fails for multiple reasons.  First, the record of
undisputed facts shows that Skinner received more than adequate due process
under the Supreme Court's decisions in *Cleveland Bd. of Educ. v. Loudermill*, 470
U.S. 532 (1985), and *Gilbert v. Homar*, 520 U.S. 924 (1997), as well as Fourth
Circuit precedents following *Loudermill*, such as *Holland v. Rimmer*, 25 F.3d 1251
(4th Cir. 1994), and *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459 (4th Cir. 1990).
Skinner's argument rests upon the non-binding opinion of a four-Justice plurality
in *Brock v. Roadway Express*, 481 U.S. 252 (1987) (plurality opinion), a decision
that Skinner fails to identify as non-binding or as a plurality, but which is of little

persuasive value in this case due to the singular nature of its facts.  Even under *Brock*, however, Skinner's argument fails because Skinner was well-informed of the substance of the County's evidence.

Skinner's second argument, that he was denied post-termination due process because the County should have been compelled to summon his chief accuser, Nacy, as its own witness, also fails.  Skinner mistakes his own voluntary right to call witnesses, present evidence, and cross-examine witnesses as including a right to dictate that his "accusers" must be presented at his grievance hearing.  There is no such right under *Loudermill*, 470 U.S. 532; the Supreme Court has noted that there is no Confrontation Clause-style right to confront one's accusers in civil matters, and this Court specifically held in *Detweiler v. Virginia Dep't of Rehabilitative Servs.*, 705 F.2d 557 (4th Cir. 1983) that a grievant is not entitled to compulsory process of witnesses at a grievance hearing.  Skinner's arguments ignore this precedent and misconstrue *Grimes*, 462 F.2d 650, and *Garraghty v. Virginia Dep't of Corrs.*, 52 F.3d 1274 (4th Cir. 1995).  Additionally, contrary to Skinner's arguments, due process is a flexible concept and the circumstances of this case show that Skinner was afforded ample post-termination process.

Skinner's third due process argument, that he was denied due process because of the supposed violation of Section 11.11(B) of the County grievance procedure, fails for four reasons.  First, he misinterprets the text of the rule as

implying that the County was required to identify certain documents to him even without having requested such identification.  Second, his argument wrongly assumes that he had a due process interest in receiving discovery prior to his grievance hearing—a conclusion that is inconsistent with *Loudermill*, 470 U.S. 532, *Mathews v. Eldridge*, 424 U.S. 319 (1976), *Gilbert*, 520 U.S. 924, and the Fourth Circuit authorities chiefly relied on by Skinner, *Grimes*, 462 F.2d 650, and *Garraghty*, 52 F.3d 1274.  Similarly, Skinner wrongly assumes that he has a right to certain specific procedures whether or not his interests would be prejudiced by substitute process.  Finally, Skinner was provided adequate process and can identify no cognizable prejudice related to Section 11.11(B).

Skinner's argument regarding defamation *per se* mistakenly suggests that the District Court made factual findings and ruled upon his defamation claim under Rule 56.  His claim was actually dismissed under Rule 12(b)(6) as the District Court's opinion letter makes clear.  This decision was proper because the defendants were entitled to qualified immunity and Skinner failed to demonstrate malice under prevailing Virginia and Fourth Circuit precedents such as *Larimore v. Blaylock*, 259 Va. 568 (2000), *Story v. Norfolk-Portsmouth Newspapers, Inc.*, 202 Va. 588 (1961), and *Mayfield v. NASCAR,* 674 F.3d 369 (4th Cir. 2012).

**IV.** **Standard of Review Applicable to Review of Decisions Granting Summary Judgment and Motion to Dismiss**

The District Court granted summary judgment as to Skinner's constitutional claims under Fed. R. Civ. P. 56(c). This decision is reviewed *de novo*. *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). Summary judgment is appropriate where there is no "genuine issue" of material fact. Fed. R. Civ. P. 56(c); *Thompson Everett Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995). The party seeking summary judgment bears the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The District Court granted judgment as a matter of law under Fed. R. Civ. P. 12(b)(6) as to Skinner's claim of defamation. This decision is reviewed *de novo*. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet*, 591 F.3d at 255.

**V.**  **The District Court properly held that Skinner was granted more than adequate process in the course of terminating him for assaulting a student.**

The District Court properly granted summary judgment as to Skinner's pre-termination and post-termination due process claims.  Based on the undisputed facts, the County afforded Skinner more process than he was due.  In attempting to argue otherwise, Skinner misconstrues and misrepresents Supreme Court authority, misinterprets County termination procedures, and ignores the bulk of due process precedent applicable to the termination of a public employee.  The District Court's decision should be upheld.

**A.**  **The County provided Skinner with more than adequate process prior to his termination (Issue Presented No. 3).**

Prior to his termination, Skinner was entitled to nothing more than "a very limited hearing."  *Gilbert*, 520 U.S. at 929 (summary suspension without pay and with no prior notice or opportunity to be heard did not violate due process) (citing *Loudermill*, 470 U.S. 532).  This "very limited hearing" is not a definitive resolution of the termination decision; it need only serve as an "initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Loudermill*, 470 U.S. at 545-46; *see Holland*, 25 F.3d at 1257-59 (administrative termination did not deprive Department of Social Services employee of due process despite non-compliance with specific provisions

9

of departmental personnel manual); *Riccio v. Cnty. of Fairfax*, 907 F.2d at 1463 (pre-termination process "need not be elaborate") (quoting *Loudermill*, 470 U.S. at 542); *Mills v. Steger*, 64 F. App'x 864, 869-70 (4th Cir. 2003) (affirming dismissal of due process claims where university employee disputed adequacy of pre- and post-termination process).  Generally, this entitles a tenured employee to only "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" "either in person or in writing." *Id.* at 546.

In this case, the District Court properly held that Skinner was provided "with more process than constitutionally required." (App. 167.)  On May 8, 2012, prior to his actual termination, Skinner was placed on paid leave despite the serious allegations against him.  (App. 162, 272); *see Loudermill*, 470 U.S. at 544-45 (suspension with pay avoids the problem of potential pre-termination deprivations of due process). While Skinner was on paid leave, a five-week investigation ensued, during which time Skinner, himself, was interviewed and informed of the allegations against him.  (App. 335-36.)  On June 11, based on the investigation in which Skinner participated, Chief Brower sent Skinner an extremely detailed letter identifying the dates and circumstances of his alleged misconduct, and identifying the specific County regulations he was accused of violating.  (App. 275-76.)  Chief Brower's letter informed Skinner that Brower was "considering terminating

[Skinner's] employment," but invited Skinner to "present any evidence or mitigating circumstances" in person or through a written submission. (App. 276.) Skinner <u>both</u> met in person with Brower to explain his side of the story on June 25, 2012, and submitted a lengthy document that addressed and attempted to rebut in detail each of the specific allegations against him. (App. 660-700.) This document included numerous attachments and statements that evinced a detailed understanding of the substance of the allegations and evidence against Skinner. (App. 660-700.) Eight days later, after a two-months investigation, correspondence, a hearing, and consideration "of all the information presented," Brower terminated Skinner on July 3, 2012. (App. 702-703.) As the District Court noted, Skinner's extensive written submission demonstrates beyond a doubt that, by the time of his initial hearing, Skinner had been informed of the evidence against him and was able to summon extensive evidence of his own. (App. 167.)

In disputing this obvious conclusion, Skinner ignores or elides over the weight of applicable precedent in favor of a tortuous rendering of the phrase, "an explanation of the employer's evidence." (Br. Appellant 17-18) (quoting *Gilbert*, 520 U.S. at 928). As the cases cited by Skinner make clear (*Loudermill*, *Gilbert*, and the <u>plurality</u> opinion in *Brock v. Roadway Express*), Skinner was entitled to a simple preliminary hearing to verify that his proposed termination was based on "reasonable grounds." *Gilbert*, 520 U.S. at 929 (quoting *Loudermill*, 470 U.S. at

11

546); *see Brock v. Roadway Express*, 481 U.S. at 264-65 (Marshall, J.) (plurality opinion).  At most, this entitled Skinner to be informed of "the substance" of the evidence against him, not a detailed pre-hearing list of witnesses and exhibits. *Brock*, 481 U.S. at 264-65 (Marshall, J.) (plurality opinion); *but see Brock*, 481 U.S. at 271-72 (White, J., dissenting) (three-Justice dissenting opinion noting that the "procedures the Due Process Clause requires prior to administrative action . . . can vary, depending upon the precise nature of the government function involved, the importance of the private interests that have been affected . . . and the nature of subsequent proceedings").[1]

As evidenced by his own written submission, Skinner was informed of the substance of the allegations and evidence against him.  (App. 660-700.)  Skinner's protestation that he was "forced to guess at the nature of [the evidence against him] and to essentially argue in the dark" misses the point of the pre-termination process due him: the pre-termination hearing verifies only that there is a reasonable basis for the termination decision; it is not a dress rehearsal for a full post-termination hearing.  *See* (Br. Appellant 18.)  To find that an "explanation of the evidence" requires a detailed pre-hearing disclosure of specific witnesses, documents, and testimony would ignore 40 years' of Supreme Court and Fourth Circuit due

---

[1] To the extent that the plurality opinion in *Brock*, 481 U.S. 252, can be construed as requiring more of an "explanation" of evidence than was provided to Skinner in this case, the County maintains that *Brock* is inconsistent with *Loudermill*, 470 U.S. 532, and *Gilbert*, 520 U.S. 924, and should not be considered.

process precedent. The District Court correctly noted that Skinner's written submission prior to the hearing (let alone any additional information provided at the hearing) demonstrated that he was well aware of the evidence against him. Accordingly, summary judgment was properly granted as to Skinner's allegations of pre-termination denial of due process.

### B. The County did not deprive Skinner of due process by not calling Nacy as a witness at Skinner's post-termination hearing (Issue Presented No. 1).

Relying heavily on this Court's opinions in *Grimes* and *Garraghty*, Skinner claims that the County denied him due process by not compelling one of his accusers, Nacy, to appear at his grievance hearing as its own witness. *See Grimes*, 462 F.2d 650; *Garraghty*, 52 F.3d 1274. Skinner admits in his brief that he "does not challenge the admissibility of the hearsay statements at the [grievance] hearing." (Br. Appellant 21). Skinner's argument that he was denied due process is contrary to law. (Br. Appellant 21). He admitted as much at the hearing, acknowledging that the Rules of Evidence do not apply in the administrative grievance process.[2] (App. 331.) Nonetheless, Skinner persists in arguing that due process mandates that the County must summon his accusers as its own witnesses so that he can "confront" them. Skinner has no such right, and the County

---

[2] "This is essentially a hearsay objection, which I know doesn't necessarily fly in these proceedings, but the right to confront witnesses does, and we would object to any statements by Mr. Nacy since we don't have the right to confront him."

13

provided him more than adequate process prior to and during his hearing.  *See Garraghty*, 52 F.3d at 1282 (value of additional procedural safeguards determined relative to the adequacy of actual procedures used) (citing *Mathews*, 424 U.S. at 335).  Accordingly, the District Court properly granted summary judgment.

### 1.  Skinner's right to a post-termination hearing does not require the County to compel the attendance of Skinner's accusers at the hearing.

Skinner contends that he was deprived of his due process right to a full *Loudermill* hearing because he was not able "to confront all witnesses against him at the grievance hearing."  (Br. Appellant 21-22); *see* 470 U.S. 532, 547 (1985).  Specifically, he claims that the County improperly presented Nacy's testimony through the testimony of its investigator, Van Winkle, thereby denying him due process.  Instead, according to Skinner, the County should have been compelled to present any such testimony through Nacy, himself, in order to afford Skinner an opportunity to "confront" Nacy in person.  Applicable case law makes it clear that constitutional due process does not entitle an administrative grievant to a Confrontation Clause-style right to compel an accuser's appearance before the administrative tribunal.  *Austin v. United States*, 609 U.S. 602, 608 n.4 (1993) (confrontation clause inapplicable in civil proceedings); *Detweiler*, 705 F.2d at 560 ("[p]rovision for compulsory process for witnesses is not an essential element of due process at an employee's grievance hearing"); *see also Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305, 309-10 (2009) (holding that the Sixth Amendment right of a <u>criminal defendant</u> to confront witnesses against him "guarantees a defendant's right to confront those 'who bear testimony' against him") (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52, 54 (2004)). Skinner mistakes the right to elicit testimony and present evidence as part of his "full post-termination hearing" as an obligation on the part of the County, rather than his own voluntary opportunity. *See Garraghty*, 52 F.3d at 1283 (construing a full hearing under *Loudermill*). Skinner does not have a due process right to demand Nacy's appearance.

Since his grievance hearing, Skinner has placed mistaken reliance on this Court's 1972 decision in *Grimes*, 462 F.2d 650. (App. 319, 331, 469; Br. Appellant 15.) Specifically, Skinner insists that a "famous case in Virginia, *Grimes v. Nottoway County School Board*" stands for the rule that "one of the fundamental elements of due process in an administrative hearing is that one has the right to confront witnesses." (App. 319.) *Grimes*, a decision that predates the Supreme Court's seminal *Bd. of Regents v. Roth*, 408 U.S. 564 (1972), *Mathews*, and *Loudermill* precedents, nowhere states that an administrative grievant has the right to compel his employer to produce certain witnesses. *See* 462 F.2d 650. This Court has since clarified that no such right exists, and district courts within this Circuit have denied similar due process claims by terminated public employees.

15

*See Detweiler*, 705 F.2d at 560; *Roberts v. Cnty. of Fairfax*, 937 F. Supp. 541, 546 (E.D. Va. 1996) (Ellis, J.) (relying on *Detweiler* in holding that administrative grievant was not entitled to compulsory attendance of witnesses); *Jordan v. Prince William Cnty.*, No. 1:08-cv-89, 2008 U.S. Dist. LEXIS 80321, at *15 (E.D. Va. 2008) (O'Grady, J.) (relying on *Detweiler* for the proposition that "due process does not require that grievants be granted the power to compel witnesses or documents for an administrative hearing"), *aff'd*, 326 F. App'x 243 (4th Cir. 2009). There is simply no authority for the proposition that a full post-termination hearing includes a right to compel the County to summon and elicit testimony from specific witnesses.

In *Grimes*, a non-tenured high school teacher terminated for disciplinary reasons disputed the adequacy of the termination procedures afforded to her.  462 F.2d at 651. The District Court disagreed and dismissed the action.  *Id.* at 652-53. This Court affirmed the dismissal, holding that the hearing received by the plaintiff in that case was "adequate to satisfy the requirement of procedural due process." *Id.*  On appeal, this Court held that the teacher had been afforded "ample opportunity to question" her principal and superintendent, who were the "only two witnesses appearing against the plaintiff." *Id.* at 653.  The Court never stated that her right extended any further, though it stands to reason that, because the teacher

16

was terminated for "disciplinary problems," her principal and superintendent were not the only firsthand witnesses to any alleged misconduct. *See id.* at 652-53.

In *Garraghty*, a prison administrator was terminated without the opportunity to question the witnesses against him and without a full post-termination hearing required under *Loudermill*. 52 F.3d at 1278. Two administrative reviews of the termination decision were taken by different prison officials, both of whom refused to allow the administrator a full hearing and gave him "no opportunity to examine any witnesses." *Id.* Throughout the course of his termination, the administrator never received any opportunity "to confront or examine witnesses." *Id.* at 1280. The administrator subsequently brought suit for denial of due process stemming from the deprivation of his government employment and other alleged constitutional and contractual violations. *Id.* at 1279. The defendants moved for summary judgment on the grounds of qualified immunity and immediately appealed the district court's decision denying summary judgment as to a majority of the claims. *Id.* at 1279. This Court reversed the district court's decision as to most of the claims of qualified immunity, but affirmed the denial of summary judgment as to the deprivation of government employment, finding that the post-termination process had been inadequate. *Id.* at 1282-84.

Neither *Grimes* nor *Garraghty* guarantees an absolute right to Sixth Amendment-style confrontation of accusers in administrative grievance

17

proceedings. 462 F.2d 650; 52 F.3d 1274. As the Supreme Court noted in another case heavily relied on by Skinner, such an "absolute rule" regarding due process would be "indefensible." *See Gilbert*, 520 U.S. at 930-31 (generally emphasizing "the flexibility of due process"). *Grimes* stands for the proposition that a grievance hearing is properly conducted where the grievant is afforded an opportunity to cross-examine those witnesses who actually appear. *Garraghty*, similarly, stands for the proposition that a meaningful, "full post-termination hearing" under *Loudermill* generally includes the right to call witnesses and cross-examine opposing witnesses. *Garraghty*, 52 F.3d at 1283-84; *but see Gilbert*, 520 U.S. at 930-31 (cautioning against universal, specific procedural guarantees as "indefensible"). Neither of these cases, nor any other Fourth Circuit or Supreme Court precedent, states that a grievant has an absolute right to demand that his former employer compel the attendance of specific witnesses or elicit specific testimony.

### 2.  Skinner suffered no deprivation of due process on account of Nacy's absence.

The bottom-line consideration in ascertaining the adequacy of Skinner's post-termination process is whether Skinner was allowed to meaningfully respond to the allegations forming the basis of his termination. *See Mathews*, 424 U.S. at 333-35 (administrative grievants have a post-termination right to be heard at "at a meaningful time and in a meaningful manner"); *Garraghty*, 52 F.3d at 1282-84

18

(whether or not process afforded a grievant is meaningful requires considering probable value of substitute procedure). Skinner cannot in good faith contend that he was unable to meaningfully respond to the allegations against him.

Skinner has not been denied anything to which he was entitled. Skinner nowhere states that he did not have an opportunity to confront those witnesses who did appear for the County. He does not contend that he was not allowed to call witnesses in his defense, including Nacy. Nor does he assert that he was never informed of his accusers' identities. Additionally, he makes no claim that the County prevented him from interviewing or otherwise responding to his accusers in the four and one half months between his termination and the grievance hearing. *See* (Br. Appellant 6-8; App. 18-19). In sum, Skinner does not contend that the County denied him the opportunity to call Nacy as a witness, elicit testimony from Nacy, or present Nacy's statements at his hearing. If Skinner now feels that he was not able to adequately "confront" Nacy's accusations that Skinner kicked, struck, and verbally assaulted him, it is because of his and his counsel's strategic decisions or Nacy's unavailability on the date of the hearing.[3]

---

[3] Skinner tacitly admits, without addressing the significance of the fact, that Nacy was overseas in Afghanistan at the time of Skinner's grievance hearing. (Br. Appellant 8 (citing App. 316-17).) Skinner does not indicate whether he made any previous attempt to interview Nacy or that he requested a continuance of the hearing so that he could call Nacy as a witness. Instead, he insists that he could not be expected to call Nacy as a witness himself, because to do so would work

In granting summary judgment, the District Court properly found that Skinner was allowed to "rebut any evidence entered into the record by the County." (App. 169.) Skinner cross-examined and in some cases even "re-crossed" witnesses. (App. 169, 396, 413, 43.) He presented his own evidence, both documentary and testimonial, and had the opportunity to rebut the evidence presented by the County. As the District Court noted, Skinner's list of proposed exhibits included <u>documentary hearsay testimony from Nacy</u>, a supporting letter from a direct witness to the Nacy incident, and memoranda regarding Nacy's claims. (App. 169, 289.) Skinner nonetheless maintains that Nacy's presence was crucial because "only" "Nacy himself" could answer questions about the "details of the sequence and timing of events, layout of the room, exchanges between Skinner and Nacy, and other details" of the incident. (Br. App. 21.) Skinner's evidence and actions at his hearing prove otherwise: at his grievance hearing Skinner examined a sympathetic witness who claims to have witnessed the circumstances of the Nacy incident. (App. 504-21.) Skinner cross-examined another witness to the incident who sat only "three and a half, four feet away" at the time of Skinner's alleged assault on Nacy. (App. 401-11.) Plainly, Skinner's decision not to call Nacy as a witness reflects, in the words of the District Court,

---

"against his interest." (Br. Appellant 22.) He cites no law supporting this argument.

"little more than potential strategic errors and administrative oversights by him and his lawyer." (App. 168.)

### C. Skinner did not have a protected interest in receiving an "identification" of "the files or documents the County intends to use" at his grievance hearing (Issue Presented No. 2).

Once again, Skinner seeks to transform his own permissive right into a positive obligation on the part of the County. Yet no such obligation exists under the text of the relevant rule or the constitutional dictates of due process. By Skinner's rendering, not only was he entitled to a full grievance hearing, but in preparation for that hearing the County should have provided him with an itemized list previewing the specific documents that the County intended to introduce at the hearing. (Br. Appellant 23.) Skinner claims that LCPPP Section 11.11(B) necessarily implies such an obligation, otherwise it would be "impossible" for him to take advantage of the procedural protection articulated in the rule.[4] *See* (App. 250 (full text of Section 11.11(B)).) Skinner misconstrues the County Code, misconstrues the constitutional import of the rule, and wrongly asserts that his rights were violated even though he was not actually prejudiced.

---

[4] Skinner provides only one citation—to "*Church v. Hubbard*, 6 U.S. 187 (1864)"—to support his "impossibility" argument. Skinner mistakes the name of the respondent and the date of that case. He also incorrectly cites the notes on John Quincy Adams's oral argument on behalf of the respondent as the holding of the Court. *Church v. Hubbart*, 6 U.S. 187 (1804), involved a contractual dispute over a maritime insurance provision that excluded claims arising from "illicit trade with the Portuguese." 6 U.S. at 232. The County submits that the future president's remarks before the Court on that subject have no bearing on this matter.

21

### 1.     Skinner misinterprets LCPPP Section 11.11(B).

Skinner misreads the plain text of Virginia Code § 15.2-1507(A)(10)(b)(3) and LCPPP Section 11.11(B).  Those provisions provide that he should be "allowed" <u>access</u> to "all relevant files intended to be used in the grievance proceeding."  (App. at 250.)  Section 11.11(B) does not create a positive obligation on the part of the County to identify or provide files if Skinner makes no request.  One party's right of access to documents and records does not imply a reciprocal obligation to anticipate a request and draft a catalog of available files.

Section 11.11(B) does not state that the County must identify anything as a prerequisite of Skinner exercising his right to "access" files.  Skinner insists that such a requirement inheres in the "plain text" of Section 11.11(B).  Yet 11.11(B) states that a grievant is "allowed access to" certain files, not that he "must be provided" files.  This language is permissive, not mandatory.  If the rule implies anything, it is that the County has no obligation to act until the grievant affirmatively requests to review or copy files.  There is no requirement in Section 11.11(B) that the County do anything other than accede to a lawful request.  Skinner admits that he never made any such request.  (Br. Appellant 24.)  This admission should end any inquiry regarding supposed violation of the rule or related deprivation of due process.

22

Skinner suggests that he should not be required to make any request, because it is impossible for him to "request copies of documents that he cannot identify." (Br. Appellant 24.)  However, the policy clearly sets forth that all the grievant need do is submit a general request or inquiry to the County for "access to and copies of all relevant files intended to be used by the County" at the grievance hearing. More importantly, Skinner has demonstrated that it was not "impossible" for him to obtain documents by submitting FOIA requests for broad categories of documents without prior knowledge of the documents that were "relevant" to his requests.  (App. 704, 830, 834.)  Analogously, nothing prevented Skinner, at least ten days before his grievance hearing, from requesting access to the files relevant to the County's preparation pursuant to Section 11.11(B).  Even after ten days, he made no request despite the County's offer to extend the deadline.  (App. 283.)

Finally, while Skinner contends that his reading of Section 11.11(B) is necessary to avoid rendering its full text "meaningless," he fails to address the fact that his reading of that section would make the subsequent section, 11.11(C), largely redundant.   Section 11.11(C) requires that "each side exchange[] documents, exhibits and a list of prospective witnesses" at least five days before the grievance hearing.  If the County were already under an absolute obligation to make an "identification" of relevant files 10 days before the hearing, Section 11.11(C) would be redundant.  (App. at 250.)

23

> **2.    Even if Section 11.11(B) required the County to identify documents, Skinner had no constitutional right to such an identification.**

There is no constitutional right to discovery in a civil case. *Malghan v. Evans*, 118 F. App'x 731, 734 (4th Cir. 2004) (rejecting theory that "a plaintiff in an employment discrimination suit is constitutionally guaranteed the right to confrontation through pre-trial discovery"); *see Gunter v. Virginia State Bar ex rel. Seventh Dist. Comm.*, 241 Va. 186, 190 (1991). Skinner seeks to impose an absolute, formalistic requirement that is inconsistent with prevailing due process law and unconnected to any deprivation of due process. *See Gilbert*, 520 U.S. at 930-31 (discussing the circumstantial flexibility of due process).

Skinner mistakenly suggests that his rights were violated by the County's failure to provide him with a list or "identification" of documents whether or not he requested the documents or was actually deprived of crucial evidence. According to Skinner, his rights were violated by the failure to comply with the text of a grievance procedure and irrespective of whether he suffered measurable prejudice. (Br. Appellant 25) (stating that Skinner's prior receipt of many of the documents subject to his proposed identification "is irrelevant to the duties incumbent upon the County with respect to the grievance hearing"). This argument betrays a fundamental misunderstanding of due process.

As this Court explained in a case relied on by Skinner, a grievant does not have an absolute "property right to receive the precise post-termination process . . . as provided in state law." *Garraghty*, 52 F.3d at 1284. "[U]nlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 333 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "[P]roperty cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Garraghty*, 52. F.3d at 1285 (quoting *Loudermill*, 470 U.S. at 541). "[I]f a state grievance law grants more procedural rights than the Constitution requires, failure to comply with state law does not create a federal due process violation." *Id.* (quoting *Riccio*, 907 F.2d at 1469). The "fact that a state agency violates its own procedures does not, *ipso facto*, mean that is has contravened federal due process requirements." *Morris v. City of Danville*, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984) (cited in *Palotai v. Univ. of Md.*, 38 F. App'x 946, 953 (4th Cir. 2002)). "The sufficiency of the procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances." *Grimes*, 462 F.2d at 653 (quoting *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970)).

An identification of "relevant files" to be used at a grievance hearing is not a necessary requirement of a post-termination hearing under *Loudermill* or any other precedent indicated by Skinner. *See Loudermill*, 470 U.S. at 546 (requiring a grievant to be provided a hearing at a meaningful time). Even if Skinner were correct in asserting that Section 11.11(B) required the identification of documents that he describes, Skinner provides no authority supporting his assertion that such a hyper-technical violation of the discovery rules applicable to a grievance procedure violates due process where other process was provided. *See Holland*, 25 F.3d at 1257 (rejecting claim of inadequate notice of termination where notice was provided, but not on specific Virginia Department of Social Services personnel form). No such authority exists and regardless of the specific process called for under the county code, the process afforded to Skinner was more than adequate.

### 3. Skinner was not deprived of any right and suffered no prejudice in his ability to defend himself at his grievance hearing.

Skinner cannot complain that his due process was violated where his right to be heard "at a meaningful time and in a meaningful manner" was not affected. *Mathews*, 424 U.S. at 333. Skinner does not contend that he requested an identification of documents under Section 11.11(B) and that such request was denied. Rather, he insists that he never made any such request and argues that the District Court actually committed error by suggesting otherwise. (Br. Appellant

24.)  Skinner does not allege that he was denied access to documents that would have changed the course of his hearing.  He made five FOIA requests between his June pre-termination hearing and July 16, 2012—four months to the day before his full grievance hearing.  (App. 201-202.)  He admits that he previously received all or some of the documents that would have been identified to him.  (Br. Appellant 25.)  He admits that, seven days before his hearing, he was provided with a pretrial list of witnesses and exhibits elsewhere required under the County grievance procedure.  (Br. Appellant 25.)  He was represented at the grievance hearing by counsel.  (App. 297.)  He nowhere asserts that he was surprised by the introduction of any documents at his hearing, though he was permitted to introduce documents not previously identified.  (App. 518-19.)  Instead, Skinner vaguely and without explanation asserts that he "would have had, or at least may have had, a different strategy" if an identification had been made.  (Br. Appellant 25-26.)

Skinner fails to identify any prejudice that was actually worked against him, and the District Court properly granted summary judgment.

## VI.    **The District Court properly held that Skinner's defamation *per* se claim fails under Fed. R. Civ. P. 12(b)(6) because Skinner made no showing of malice (Issue Presented No. 4).**

The District Court properly dismissed Skinner's defamation claim as a matter of law under Rule 12(b)(6) because Skinner's allegations were conclusory, inadequate, and devoid of evidence of malice.  Alternatively, as argued below,

Skinner's defamation claims were brought at least eight months after the statute of limitations in Virginia had run. Va. Code § 8.01-247.1; (App. 79-80.) His claim should have been dismissed on this ground, as well.

Skinner does not challenge the District Court's determination that the individual Defendants were entitled to qualified privilege. (Br. Appellant 26-27.) Instead, he argues that his conclusory assertion that the individual Defendants "knew the statements [about Skinner] to be false and acted intentionally in reporting the allegations" should have sufficed to meet his burden. (Br. Appellant 26-27.) He further argues that the District Court improperly weighed evidence in concluding that Skinner had failed to state a claim.

Where qualified immunity applies to communications "between persons on a subject in which the persons have an interest or duty," a statement is not "published" unless the plaintiff shows that the publisher was motivated by malice. *Larimore*, 259 Va. at 572; *see Dickenson v. Wal-Mart Stores, Inc.*, No. 96-0240, 1997 U.S. Dist. LEXIS 19459, at *9 (W.D. Va. Nov. 3, 1997) (allegedly defamatory statements deemed unpublished where published between officers or employees having "duty or authority to receive the information"). Where an employee or officer has a duty to make a certain communication, it is presumed that the communication was made without ill motive. *See Larimore*, 259 Va. at 274 (plaintiff failed to show that communication from company directly to its

employee was motivated by anything other than existing duty). "Malice sufficient to overcome a qualified privilege is behavior actuated by motives of personal spite, or ill-will, <u>independent of the occasion on which the communication was made</u>." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134-35 (2003) (internal quotation marks omitted) (emphasis added). A district court can properly find a lack of malice and dismiss a defamation claim without weighing a plaintiff's evidence or allowing discovery. *See, e.g.*, *Mayfield*, 674 F.3d at 377-78 (affirming dismissal of NASCAR driver's "conclusory" defamation claim that was based on unsupported assertions of malice).

Skinner pleads no facts giving rise to a plausible inference of malice. Skinner's bare allegation that the individual Defendants "knew the statements to be false and acted intentionally in reporting the allegations" constitutes "precisely the sort of allegation[] that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378. This constitutes "a mere recitation of [a] legal standard;" it is not on its face a "plausible" articulation of facts from which malice may be inferred. *Mayfield*, 674 F.3d at 377 ("malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated"); *see Nemet Chevrolet*, 591 F.3d at 255 ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes").

Skinner's bare allegation that the individual Defendants "acted intentionally" fails to state a claim because a plaintiff must make an "independent" showing of "personal spite" or "ill-will" to state a claim under Virginia law. *Fuste*, 265 Va. at 134-35. This requires proof that goes "beyond the publication itself." *Story*, 202 Va. at 590-91 (emphasis added) ("the occasion on which the communication was made rebuts the inference of malice prima facie arising from a statement prejudicial to the character of the plaintiff, and puts upon him the burden of proving that there was malice") (internal quotation marks omitted) (quoting Martin L. Newell, *Slander and Libel* § 341 (4th ed. 1924)). Skinner cannot simply allege that the Defendants intentionally published defamatory statements about him. The "onus is cast upon [Skinner] to prove the existence of malice" and if he "offers no evidence or insufficient evidence to prove actual malice . . . his action must fail." *Story*, 202 Va. at 591. Skinner offered only conclusory allegations, not proof, and the District Court properly dismissed his claim.

## VII. Conclusion

The District Court's decision granting summary judgment as to Skinner's constitutional claims and dismissing his defamation *per se* claim for failure to state a claim should be upheld.

**Respectfully submitted,
Loudoun County Department of
Management and Financial
Services, Human Resources
Division; Loudoun County
Department of Fire Rescue and
Emergency Management; William
Keith Brower; Jose Salazar; Roger
Martin; James Williams; Patty
Russell; Steven Van Winkle; Frank
Holtz; Robert Noe; Corey Parker;
Stephen Nacy; Matthew Bisgaier;
Karen Reidy; and James Cromer**

By Counsel

## Fed. R. App. P. 32 CERTIFICATE

Pursuant to Rules 32(a)(7)(B)-(C) of the Federal Rules of Appellate Procedure, the undersigned counsel for the Appellees certifies that this brief is printed in 14-point type with serifs and, including footnotes, contains 7143 words including footnotes and headings, but excluding the title page, table of authorities, table of contents, and certificates, according to Microsoft Word.

## CERTIFICATE OF SERVICE

I, Julia B. Judkins, Esq., hereby certify that on the 17th day of November, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas K. Plofchan, Jr., VSB No. 34536
Westlake Legal Group
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
703-406-7616 Telephone
703-444-9498 Facsimile
tplofchan@westlakelegal.com
*Counsel for Appellant*

_____/s/_____
Julia B. Judkins, VSB No. 22597
BANCROFT, McGAVIN, HORVATH &
JUDKINS, P.C.
3920 University Drive
Fairfax, Virginia 22030
(703) 385-1000 Telephone
(703) 385-1555 Facsimile
jjudkins@bmhjlaw.com
*Counsel for Appellees*